**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

ARCHIE W. HENRY                                                                                                    PLAINTIFF

v.                                      3:13CV00146-JM-JJV (LEAD)
                                        3:13CV00147 -JM-JJV (CONSOL)

MATT HALL, Jail Administrator,
Craighead County Jail; *et al*.                                                                              DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge James M. Moody, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the District

Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## Disposition

### I. INTRODUCTION

Plaintiff Henry, an inmate incarcerated at the Craighead County Detention Facility (Jail), filed this action *pro se* pursuant to 42 U.S.C. § 1983, alleging inadequate medical care and treatment at the Jail from January 2013 to June 2013, when he was transferred to the Arkansas Department of Correction (Doc. No. 14). He asks for monetary and injunctive relief from Jail Administrator Matt Hall, Nurses Tracy Reece and Chasity Jackson, and Dr. Troxel.[1]

Both Plaintiff and Defendants have filed Motions for Summary Judgment (Doc. Nos. 80-83, 88, 92), and both sides have responded to the respective Motions. (Doc. Nos. 88, 92, 105). After careful consideration of the Motions and Responses, the Court concludes that Defendants' Motions for Summary Judgment should be granted and this matter should be dismissed.

### II. AMENDED COMPLAINT

Mr. Henry submitted sick call slips in March 2013 for a sore throat and blood in his stool.

---

[1] Defendants Boyd and Duncan were named in the original Complaint but not in the Amended Complaint; they were dismissed on October 21, 2013, for failure to state a claim upon which relief may be granted. (Doc. No. 19.)

2

(Doc. No. 14 at 5.) Nurse Reece diagnosed him with hemorrhoids and prescribed medication for two to three weeks, without improvement. (*Id*.) Reece later took a blood sample, checked his blood pressure, and told Plaintiff she would schedule him to see the doctor. (*Id*.) Plaintiff continued to have blood in his stool and a sore throat, but when he again saw Reece in April, she told him to wait for his doctor's appointment, and to show officers evidence of blood in his stool. (*Id*.)

Plaintiff later saw Nurse Jackson, who gave him a stool sample kit which he used. (Doc. No. 14 at 6.) Plaintiff then saw Dr. Troxel, who examined his throat, noting redness and swelling. (*Id*.) He also prescribed steroids and "Marcrocillin," but did not tell Plaintiff why his throat was sore or what was wrong. (*Id*.) The medication was not effective, and Plaintiff returned to the infirmary to see Nurse Jackson, who unsuccessfully attempted to draw Plaintiff's blood numerous times. (*Id*. at 7.) Nurses Reece and Jackson then told Plaintiff he needed a colon cancer test and Plaintiff would be required to pay $350.00. (*Id*.) Later, they told him that Mr. Hall, Jail Administrator, ordered them to discontinue his medical care until he could pay the $350.00. (*Id*. at 8.) Plaintiff contends that Defendants Reece and Jackson failed to provide him further medical treatment and acted with deliberate indifference to his medical problems. (*Id*.)

**III.   SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Dulany v. Carnahan,* 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Webb v. Lawrence County,* 144 F.3d 1131, 1134 (8th Cir. 1998) (citations omitted). "Once the moving party has met this

3

burden, the non-moving party cannot simply rest on mere denials of allegations in the pleadings; rather, the non-movant must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 1135 (citations omitted). Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Id*.

    A.    **Defendants Reece, Jackson, and Troxel**

Plaintiff claims Defendants Reece and Jackson mis-diagnosed him with hemorrhoids when he complained about blood in his stool, and failed to perform a rectal examination. (Doc. Nos. 81-82.) After he submitted stool samples, they improperly denied him a colonoscopy, based on his inability to pay $350.00 for the test. He claims Dr. Troxel delayed and then postponed the colonoscopy. (Doc. No. 83.) When he finally received the colonoscopy in December 2013, he was told by the doctor who performed the test that he had saved his life by removing a polyp. He claims all three Defendants knew of his colon problems and deliberately disregarded them, causing him to suffer until he had the colonoscopy in December 2013.

In response, Defendants state Plaintiff cannot support an Eighth Amendment claim of deliberate indifference against them, and that his Complaint amounts to a disagreement over the type of treatment he was provided, which does not support a constitutional claim. In support, they provide Plaintiff's medical records, which show the following:

Plaintiff complained about a sore throat on March 15, 2013. (Doc. No. 92-1 at 1.) Nurse Reece examined him and contacted Dr. Troxel, who prescribed Dilotab II. (*Id*.) On March 27, 2013, Plaintiff complained about blood in his stool and saw Nurse Jackson, who examined and assessed him. (*Id*. at 2-3.) Dr. Troxel issued an order for medication and for Plaintiff to increase his fluid

4

intake. (Doc. No. 92-1 at 2-3.) Plaintiff then submitted sick call requests on April 13 and 19, 2013, with no complaints of rectal bleeding. (*Id*. at 6-10.) Nurse Reece examined him on April 22, 2013, and diagnosed him with laryngitis. (*Id*. at 9-10.) Dr. Troxel prescribed Zithromax and Prednisone. (*Id*.)

On April 24, 2013, Plaintiff complained about blood in his stool and a non-party nurse requested lab tests. (Doc. No. 92-1 at 11-15.) On April 25, 2013, Plaintiff saw Nurse Jackson who performed a work-up and order for labs and medications, and included a note to consider a cytoscopy procedure. (*Id*. at 16.) On April 26, 2013, Dr. Troxel ordered a colonoscopy, but the clinic at which it was scheduled cancelled the appointment after Plaintiff was unable to pay $350 for the test. (*Id*. at 17-22.) Jail Administrator Brett Duncan told Nurse Jackson that "if Dr. Troxel thinks that this procedure is necessary, we will pay for it." (*Id*. at 24.)

On April 29, 2013, medical personnel determined that not all of the lab tests requested for Plaintiff had been completed, and an additional lab was collected on May 1, 2013. (Doc. No. 92-1 at 19.) After reviewing the results and consulting another physician, Dr. Troxel concluded on May 2, 2013, that the lab results were within normal limits and there no longer was a need for a colonoscopy. (*Id*. at 28.)

Plaintiff filed an ADC health services request form complaining about blood in his stool on May 17, 2013, and then filed the requisite county form on June 3, 2013. (Doc. No. 92-1 at 29-30.)[2] Nurse Jackson saw him on June 6, 2013, and Dr. Troxel ordered medications and a colonoscopy. (*Id*.

---

[2]Although Plaintiff may have been considered an ADC inmate at this point, he was not transferred to the ADC until June 10, 2013. (Doc. No. 90-1 at 1.) Plaintiff submitted a notice of a change of address to the Delta Regional Unit on July 22, 2013 (Doc. No. 8).

at 33-48.)³

Plaintiff was treated at the Delta Regional Unit on July 2, 2013, and stated he had not seen blood in his stool for over a week. (Doc. No. 92-1 at 49-52.)  He submitted sick call requests and/or was seen by health care providers on July 27, 2013; August 2, 5, 12 and 13, 2013; and September 17, 2013; all with no complaints of blood in his stool.  (*Id*. at 55; Doc. No. 92-2 at 1-10.)  Plaintiff reported blood in his stool on September 20, 2013, and was seen by a nurse at Delta on September 25, 2013, who prescribed medications and referred him for a colonoscopy.  (*Id*. at 11.)  A colonoscopy was performed on December 5, 2013, and one benign polyp of 10 mm was removed.  (*Id*. at 16-23.)

Based on the above, Defendants state Plaintiff cannot show that they acted with deliberate indifference to his serious medical needs, which constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (deliberate indifference includes intentional interference with prescribed treatment; inadvertent or negligent failure to provide adequate medical care cannot be said to constitute "unnecessary and wanton infliction of pain").  "Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." *Vaughan v. Lacey*, 49 F.3d at 1346 .  However, "[a] showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions." *Gibson v. Weber*, 433 F.3d at 646.

The United States Court of Appeals for the Eighth Circuit has explained:

> Prison doctors and guards violate the Eighth Amendment when they act with 'deliberate indifference to [an inmate's] serious medical needs.' 'Deliberate

---

³However, neither party has provided information about whether that colonoscopy was completed.

indifference' entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Likewise, an inmate's 'mere disagreement with the course of his medical treatment' fails to state a claim of deliberate indifference.

*Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) (citations omitted).

And an allegation of negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). *See also Smith v. Marcantonio*, 910 F.2d at 502 (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). Furthermore, prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996).

In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim. *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled in part on other grounds) (quoting *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)). "In the face of medical records indicating that treatment was provided and physician affidavits indicating the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." *Dulany, supra,* 132 F.3d at 1240.

The initial diagnosis of hemorrhoids made by Nurses Reece and Jackson may have been erroneous, but Plaintiff provides no evidence that they deliberately mis-diagnosed him and refused to treat him. The medical records show that the first scheduled colonoscopy was cancelled by the clinic, that Jail officials indicated a willingness to pay for a medically necessary test, but that Dr. Troxel ultimately determined that a colonoscopy was not needed. This was a decision based on the lab tests after consultation with another doctor, and again, this does not support a finding of deliberate indifference. Rather, it amounts to a disagreement over the type of medical care and treatment provided, which is not a constitutional violation. And, Plaintiff provides no verifying medical evidence to show that the delay in undergoing the colonoscopy caused a detrimental effect to his health.

Plaintiff claims he is not knowledgeable about the law, lacks adequate access to legal materials at the Jail, and should be appointed counsel to represent him. (Doc. No. 105.) However, given the allegations of his Amended Complaint and the medical records provided by him and the Defendants, the Court finds no dispute of material fact and that Defendants are entitled to judgment as a matter of law on Plaintiff's claims against them.

**B.    Defendant Hall**

Plaintiff claims Mr. Hall ordered Nurses Reece and Jackson not to provide him medical treatment until Plaintiff paid $350 for a colon cancer test (Doc. No. 80 at 2). Plaintiff says, even though he spoke with Hall on two occasions about blood in his stool and the need to see an outside doctor, Hall refused his requests and cancelled his colonoscopy. (*Id*. at 6) Plaintiff says Hall also failed to follow Jail policies and procedures which state that no inmate will be denied medical care and treatment. (*Id*. at 2.)

Hall denies Plaintiff's claims and states he is entitled to official capacity immunity because

Plaintiff does not allege an unconstitutional county policy or a pattern of widespread unconstitutional conduct was responsible for the inadequate medical care. In addition, Hall states he is entitled to qualified immunity, because he is not a medical provider and denies ordering Reece and Jackson to discontinue care of Plaintiff.

In an affidavit, Hall states that Plaintiff was booked into the Jail on January 10, 2013, and released to the ADC on June 10, 2013. (Doc. No. 90-1 at 1.) During his stay at the Jail, his medical needs were provided by Advanced Correctional Healthcare (ACH), which contracts with the Jail to provide medical care to the inmates. (*Id*.) Inmate medical requests are submitted to nurses who are employed by ACH, and Hall is not involved with this process and never ordered Nurses Reece and Jackson to stop treating Plaintiff. (*Id*. at 2.) Hall also was not involved in the cancellation of a colonoscopy test for Plaintiff. (*Id*. at 3.)

Hall states Plaintiff provides no proof that he acted with deliberate indifference during his incarceration, and no proof that any delay in providing a medical test caused Plaintiff harm. Furthermore, he says Plaintiff provides no proof of physical injury as a result of Hall's allegedly inadequate medical care.

After careful review of the Amended Complaint and the Motions for Summary Judgment and Responses, the Court finds that Defendant Hall is entitled to immunity from liability in his official capacity. Plaintiff does not dispute Hall's argument that a suit against him in his official capacity is a suit against his employer, Craighead County. *See Kentucky v. Graham*, 473 U.S. 159, 165-6 (1985). Nor does he dispute that in order to establish liability by the County, the law requires a showing of an unconstitutional policy or procedure, or a widespread pattern of unconstitutional conduct. *Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998); *Jane Doe A v. Special School District of St. Louis County,* 901 F.2d 642, 646 (8th Cir. 1990). Plaintiff does not offer proof

9

of an unconstitutional policy or practice; rather he states that Defendants failed to abide by its policy which requires providing medical care to all inmates, regardless of cost.

With regard to individual liability, the Court finds Plaintiff is also entitled to qualified immunity. Qualified immunity protects officials who acted in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[4] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009).

---

[4]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. at 236).

If Plaintiff was a pretrial detainee at the time of his incarceration, the due process standard of the Fourteenth Amendment applies to determine the constitutionality of his conditions of confinement. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). In the Eighth Circuit, however, the standards applied to such claims are the same as those applied to Eighth Amendment claims. *Whitnack v. Douglas County,* 16 F.3d 954, 957 (8th Cir. 1994). Therefore, to support his Eighth Amendment claim against Defendant Hall, Plaintiff must prove that Hall acted with deliberate indifference to his serious medical needs, as set forth in *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." *Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir.1995). However, "[a] showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions." *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

Furthermore, "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). A prison official who is "not involved in treatment decisions made by the medical unit's staff and 'lacked medical expertise, ... cannot be liable for the medical staff's diagnostic decision[s].'" *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (quoting *Camberos*, 73 F.3d at 176.) "[I]f any claim of medical indifference ... is to succeed, it must be brought against the individual directly responsible for [plaintiff's] medical care." *Kulow v. Nix*, 28 F.3d 855, 859 (8th Cir. 1994) (quoting *Brown v. Wallace*, 957 F.2d 564, 566 (8th Cir. 1992)).

Hall admits discussing with Plaintiff the method and place for collecting his stool samples, and admits Plaintiff complained to him that he was not being treated by the medical department. (Doc. No. 90-1 at 3-4.) Hall states Nurse Jackson assured him Plaintiff was seen by the medical

department. (*Id*. at 4.) He also denies having told nurses not to treat Plaintiff unless he could pay $350 for a medical test. (*Id*. at 2.) He states that Plaintiff's allegation concerns a conversation between Nurse Jackson and Jail Administrator Brett Duncan about the Jail paying for a medical procedure that was deemed necessary by Dr. Troxel. (*Id*. at 3.) Duncan responded that the Jail would pay if Troxel thought it was medically necessary. (*Id*.) Hall was not a party to this conversation, and learned later that an appointment made for Plaintiff on May 2, 2013, was cancelled based on the medical opinion of his treating physicians. (*Id*., Doc. No. 80 at 17.)

Although Plaintiff claims that a dispute of material fact exists concerning whether Defendants denied him access to medical care based on his inability to pay, he provides no evidence to support his allegation that Hall ordered Defendants not to provide him care. The medical records provided by both Plaintiff and Defendants Reece, Jackson and Troxel, clearly show that Plaintiff continued to be treated for his complaints of blood in his stool, and that Dr. Troxel and another physician were responsible for concluding that a May 2013 colonoscopy should be cancelled, for lack of medical necessity. (Doc. No. 69 at 9; Doc. No. 92-1 at 28.) Therefore, the Court finds that no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a violation of a constitutional or statutory right.

    **C.**    **Plaintiff's Motions for Summary Judgment**

The Court has carefully considered Plaintiff's Motions for Summary Judgment. (Doc. Nos. 80-83.) For the same reasons recited above, the Court concludes Plaintiff's Motions should be denied. The Motions essentially restate the claims outlined in the Amended Complaint. And the supporting documentation is largely the same evidence submitted by the Defendants. Based on this evidence, the Court has, *infra*, concluded that Plaintiff's claims should be dismissed. As explained above, Plaintiff fails to show he was subjected to constitutional deliberate indifference.

## IV. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Plaintiff's Motions for Summary Judgment (Doc. Nos. 80-83) be DENIED;

2. Defendants' Motions for Summary Judgment (Doc. Nos. 88, 92) be GRANTED;

3. Plaintiff's Complaint be DISMISSED with prejudice.

IT IS SO ORDERED this 14th day of November, 2014.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE